UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward L. PATE, Defendant–Appellant.

No. 02–13408.

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 2003.

**1374**

---

Robert M. Shipman, Huntsville, AL, for Defendant–Appellant.

Alice H. Martin, Joyce White Vance, Birmingham, AL, for Plaintiff–Appellee.

Before DUBINA and BLACK, Circuit Judges, and RYSKAMP,* District Judge.

DUBINA, Circuit Judge:

Appellant Edward L. Pate ("Pate") appeals the district court's imposition of his sentence under the Assimilated Crimes Act, 18 U.S.C. § 13(a) (1994) ("ACA"), for driving under the influence of alcohol ("DUI"), in violation of Ala.Code § 32–5A–191(a)(1)(1975). We affirm.

## I. BACKGROUND

A federal grand jury in the Northern District of Alabama returned a one-count indictment charging Pate with a violation of DUI as codified under Ala.Code. § 32–5A–191(a)(1) (1975), and as assimilated under 18 U.S.C. § 13(a) (1994).

The presentence investigation report ("PSI") stated that Pate had a total of five prior DUI convictions. For that reason, Pate was facing a penalty range of not less than one year and one day and not more than ten years in custody. The Alabama Code classifies his violation as a Class C felony due to enhanced penalty provisions for offenders with four or more DUI convictions. *See* Ala.Code § 32–5A–191(h) (1975). Pate entered a guilty plea, and the district court sentenced him to the statutory minimum term of one year and one day imprisonment, to be followed by a 36 month term of supervised release.

The specific facts of this case demonstrate that on July 6, 1999, Pate drove his vehicle up to Gate Nine at Redstone Arsenal, a federal installation located in Madison County, Alabama. Military police officers noticed that his vehicle had no license plate and no decal for the Arsenal. They also observed that Pate slurred his speech, appeared to have impaired functions, and was unresponsive. Pate voluntarily stated to officers, "I'm drunk. I'm drunk right now." [R. Vol. 2 at 11–12; PSI at 3–4]. He was unable to complete field sobriety tests, and officers took him into custody. A subsequent breath alcohol test showed his blood alcohol level to be .19.

---

* Honorable Kenneth L. Ryskamp, United States District Judge for the Southern District of Florida, sitting by designation.

## II. *ISSUE*

Whether the "like punishment" clause of the ACA requires a federal court to implement state policies regarding eligibility for early release and alternative forms of confinement that conflict with federal sentencing policies.

## III. *STANDARD OF REVIEW*

"The proper length of a sentence under the ACA is a question of law subject to *de novo* review by this court." *United States v. Gaskell*, 134 F.3d 1039, 1041 (11th Cir. 1998).

## IV. *DISCUSSION*

Pate's specific complaint in this case is that his sentence violates the "like punishment" clause of the ACA. The ACA provides as follows:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, *shall be guilty of a like offense and subject to a like punishment.*

18 U.S.C. § 13(a) (emphasis added).

As previously noted, the district court sentenced Pate to a sentence of imprisonment for one year and one day and 36 months supervised release. Pate did not object to this sentence, but requested that the district court allow him to serve his sentence under house arrest with electronic monitoring, as permitted under the state statute. He also argued that the punishment was not a "like punishment" because he would have had to serve only four months if he had been in state custody but would have to serve the full year and a day in a federal prison under the federal sentence.[1]

The government asserts that Pate's arguments are without merit, as he has received a "like sentence" under the ACA. The government concedes that "like punishment" means punishment that is "similar." The government further notes that alternative sentences, such as community service or early release, are not available under the federal system. Although we touched on the question of "like punishment" in *Gaskell*,[2] the specific issue presented here is one of first impression in our circuit.

In United States v. Davis, 845 F.2d 94 (5th Cir.1988), the Fifth Circuit explained that the term "like" merely implies similarity and "that state laws should be assimilated through the ACA in light of federal policy concerns." *Id.* at 99. Pate contends that state law would permit alternative sentencing such as community service, split sentence, or early release. None of these alternatives, however, are available under federal sentencing laws for a sentence the length of Pate's. That conflict is inherent in the policies of the two separate systems.

---

1. Actually, he would serve 85% based on the 15% reduction as provided in 18 U.S.C. § 3624(b)(1).

2. In *Gaskell,* we held that district courts may impose a term of probation in excess of what state law would permit to effectuate the federal policies of supervision and rehabilitation. 134 F.3d at 1045.

 State law is not assimilated for purposes of 18 U.S.C. § 13 if it conflicts with federal law. *United States v. Sharpnack,* 355 U.S. 286, 292–93, 78 S.Ct. 291, 295–96, 2 L.Ed.2d 282 (1958); *Gaskell,* 134 F.3d at 1043; *United States v. Burke,* 113 F.3d 211, 211 (11th Cir.1997); *United States v. Pinto,* 755 F.2d 150, 154 (10th Cir.1985). The *Pinto* court explained that federal courts must sentence a defendant to a term of years in accordance with the state statutes. 755 F.2d at 154. State policies regarding release and parole, however, need not be assimilated. *Id.* Indeed, in *Pinto,* the court explained that federal correctional policies should govern the conditions for release on parole because the correctional administration of federal prisons would be in disarray if ACA prisoners were under a different set of rules than other prisoners. *Id.* (citing and quoting *United States v. Vaughan,* 682 F.2d 290, 294 (2d Cir.1982)).

In *United States v. Pierce,* 75 F.3d 173 (4th Cir.1996), military police arrested Pierce for driving while impaired on the Army Base at Fort Bragg, North Carolina. Because no federal law prohibiting such conduct exists, the authorities charged him under the ACA. The defendant contended that the federal court did not have the authority to impose a term of supervised release following probation revocation because to do so created a sentence that was not "like" state provisions. In essence, Pierce was contesting the district court's sentence of supervised release, which was not allowed under state law, and Pate is contesting the district court's refusal to sentence him utilizing alternative sentencing, such as community service, split sentence, or early release. Although the cases are not factually similar, the *Pierce* court's analysis is instructive.

The Fourth Circuit emphasized that federal courts need not assimilate every aspect of state sentencing policy. 75 F.3d at 176–77. The court found that "while a federal court acting pursuant to the ACA is restricted by state law, it will not assimilate a state sentencing provision that conflicts with federal sentencing policy." *Id.* at 176. For example, courts have declined to assimilate state law requiring minimum periods of incarceration before parole, and courts have recognized that the ACA does not require adherence to state parole eligibility. *Id.* Further, courts can order supervised release even though it is not an option under state law because it is similar to the state parole system so it is "like" for the purposes of the ACA. 75 F.3d at 176–77. Additionally, we have held that courts do not have to assimilate a maximum term for a sentence of probation when the maximum term conflicts with federal policy. *Gaskell,* 134 F.3d at 1045; *see also Davis,* 845 F.2d at 100 (noting that courts may impose a monetary assessment greater than that allowed for under state law if state law conflicts with federal policy).

 For the foregoing reasons, we hold that the "like punishment" clause of the ACA does not require a federal court to implement state policies regarding eligibility for early release and alternative forms of confinement that conflict with federal sentencing policies. Accordingly, we affirm Pate's sentence.

AFFIRMED.