FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**TENCH CIRCUIT**

**August 8, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 23-6159 |
| | (D.C. No. 5:22-CR-00433-D-1) |
| RONNIE WAYNE RUIZ, | (W.D. Okla.) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **SEYMOUR**, and **BALDOCK**, Circuit Judges.

Mr. Ronnie Ruiz was sentenced to imprisonment for twelve months and one day[1] for endangering another person while eluding a police officer in Indian Country, in violation of 18 U.S.C. §§ 13 and 1152, and Okla. Stat. tit. 21, § 540A(B). On appeal, Mr. Ruiz argues that the district court erred by holding itself bound to impose the 1-year mandatory minimum sentence contained in Oklahoma's criminal statute, and that the court, therefore, committed reversible sentencing error. Because our circuit's precedents foreclose Mr. Ruiz's arguments, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1(a) and Tenth Circuit Rule 32.1(A).

[1] Mr. Ruiz was also sentenced to an additional three years of supervised release and assessed a $100 fine, but neither are at issue here.

**I.**

On October 5, 2022, a federal grand jury indicted Mr. Ruiz of endangering another while eluding a police officer in Indian Country. Because the offense occurred in Indian Country in Oklahoma, federal prosecutors used the Assimilative Crimes Act ("ACA") to try Mr. Ruiz in *federal* court, but under Oklahoma *state* law. Specifically, prosecutors charged Mr. Ruiz under the ACA with violating Okla. Stat. tit. 21, § 540A(B), which makes it a felony for "[a]ny operator of a motor vehicle" to elude a peace officer "in such a manner as to endanger any other person." The statute includes a 1-year mandatory minimum and 5-year maximum term of imprisonment. § 540A(B). Mr. Ruiz pled guilty and was convicted.

During sentencing, the district court held itself bound to apply the 1-year mandatory minimum prison sentence in § 540A(B). Mr. Ruiz objected. He pointed to another Oklahoma sentencing law, Okla. Stat. tit. 22, § 991a, which allows Oklahoma courts to suspend a qualifying defendant's prison sentence. *See* Okla. Stat. tit. 22, § 991a(A)(1) (allowing an Oklahoma court to "[s]uspend the execution of [a defendant's] sentence in whole or in part, with or without probation" and to impose certain conditions). This Oklahoma suspension provision, Mr. Ruiz argued, allowed the district court to impose the closest federal equivalent, a probationary sentence, in his case[2]—which is what he asked

---

[2] As the district court correctly observed, there exists no "suspended sentence" in federal sentencing law. After considering the sentencing factors in 18 U.S.C. § 3553, a federal court may impose (a) a fine, (b) probation, or (c) imprisonment. 18 U.S.C. § 3551(b).

2

for. The district court was unpersuaded. Relying on *United States v. Polk*, 61 F.4th 1277 (10th Cir. 2023), the court held it did not have the authority to go below the mandatory minimum prison sentence in § 540A(B) and sentenced Mr. Ruiz to imprisonment for twelve months and one day. Mr. Ruiz appealed.

## II.

We review de novo legal questions under the Sentencing Guidelines. *United States v. Mason*, 84 F.4th 1152, 1155 (10th Cir. 2023). We begin with the ACA, the federal statute under which Mr. Ruiz was charged. The "basic purpose" of the ACA "is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Lewis v. United States*, 118 S. Ct. 1135, 1139 (1998). Typically, when criminal conduct occurs on federal enclaves, like Indian reservations, it is punished via federal criminal statutes. *See Polk*, 61 F.4th at 1279. But not always. "[S]ometimes . . . no particular federal statute covers the defendant's conduct, meaning it would not otherwise be a federal crime." *Id.* In those cases, the ACA creates a federal offense by "borrowing" and applying the law of the state in which the federal enclave is located. *Id.*[3] More relevantly in Mr. Ruiz's case, the ACA "addresses not only which *charges* may be brought but also which *punishments* may be meted out." *United States v. Christie*, 717 F.3d 1156,

---

Other, rarer sanctions, not relevant here, are also available. *See* §§ 3554, 3555, 3556.

[3] The ACA provides that anyone "guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed . . . within the jurisdiction of the State . . . in which [the federal enclave] is situated . . . shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a).

1171 (10th Cir. 2013). After all, the ACA only authorizes federal courts to impose "like punishments" to those state courts can impose. 18 U.S.C. § 13(a). *See also United States v. Sain*, 795 F.2d 888, 890 (10th Cir. 1986) (holding that the purpose of the ACA is "to provide a method of punishing a crime committed on government reservations *in the way* and *to the extent* that it would have been punishable if committed within the surrounding jurisdiction" (emphasis added)).

The ACA's "like punishment" language means that, for example, "federal sentencing courts [must] abide any maximum and minimum prison terms proscribed by state law for an assimilated crime." *Christie*, 717 F.3d at 1171. *See also United States v. Garcia*, 893 F.2d 250, 256 (10th Cir. 1989). But it "does not require federal courts to incorporate *every* aspect of state criminal law that may apply to the newly created offense." *Polk*, 61 F.4th at 1279. *See also Garcia*, 893 F.2d at 254 (noting that we need not "duplicate every last nuance of the sentence that would be imposed in state court"); *Christie*, 717 F.3d at 1172 (same). Federal courts need only ensure a defendant receives a punishment "similar to the punishment he or she would receive in state court." *Polk*, 61 F.4th at 1279. Moreover, because an assimilated state crime "becomes a federal offense punishable under federal law," "[f]ederal sentencing law applies, including the [Sentencing Guidelines]." *Mason*, 84 F.4th at 1155 (quoting *United States v. Martinez*, 1 F.4th 788, 789 (10th Cir. 2021)). *See also* 18 U.S.C. § 3551(a) ("[A] defendant who has been found guilty of an offense described in any Federal statute, including sections 13 [the ACA] . . . shall be sentenced in accordance with the provisions of this chapter."); U.S.S.G. § 2X5.1 cmt.

4

background ("The sentencing guidelines apply to convictions under 18 U.S.C. § 13 (Assimilative Crimes Act)."). As such, "federal courts *must* depart from state [sentencing laws] when Congress has expressed a specific and contrary penal policy." *Polk*, 61 F.4th at 1280 (quoting *Christie*, 717 F.3d at 1172).

Here, Mr. Ruiz does not assert that the Oklahoma state crime for which he was prosecuted—endangering another person while eluding a police officer in Indian Country in violation of Okla. Stat. tit. 21, § 540A(B)—was improperly assimilated under the ACA. Rather, he argues the district court erred when it held it was required to sentence him to § 540A(B)'s express 1-year mandatory minimum. He notes that had he been tried in Oklahoma state court, an Oklahoma judge could have suspended, in whole or in part, his prison sentence via Okla. Stat. tit. 22, § 991a. *See* Okla. Stat. tit. 22, § 991a(A)(1). Thus, at bottom, Mr. Ruiz asserts that because of § 991a's suspension power, § 540A(B) *has no mandatory minimum prison sentence* the district court was required to impose and that it was error for the court to hold otherwise. He asks, as such, that we vacate and remand for resentencing.

Our precedents easily, and fatally, dispose of Mr. Ruiz's arguments. We have repeatedly refused to assimilate state "sentencing schemes," like and including Okla. Stat. tit. 22, § 991a. In *United States v. Wood*, 386 F.3d 961 (10th Cir. 2004), we were confronted with a nearly identical question. There, Wood asserted that the Indian Major Crimes Act ("IMCA"), the ACA's sister statute, "assimilates the entirety of Oklahoma sentencing laws, including 22 Okla. Stat. § 991a." *Wood*, 386 F.3d at 963. We disagreed.

5

We noted that "federal courts have consistently declined to assimilate state sentencing laws if such laws conflict with the Guidelines," and that "[b]ecause the Guidelines deny a district court the discretion to suspend a sentence of imprisonment, that option is unavailable to defendants" convicted of assimilated crimes in federal court. *Id.*[4] We, accordingly, refused to assimilate § 991a.

If *Wood* alone were not enough, in *United States v. Jones*, 921 F.3d 932, 939 (10th Cir. 2019), we reiterated "that *Wood* precludes federal sentencing courts from incorporating and applying state suspension provisions to depart from a state mandatory minimum sentence." This seemingly raises two questions relevant to Mr. Ruiz. First, whether Okla. Stat. tit. 22, § 991a(A)(1) is a "state suspension provision," and second, whether Okla. Stat. tit. 21, § 540A(B) contains a "state mandatory minimum sentence." Mr. Ruiz nowhere asserts that Okla. Stat. tit. 22, § 991a(A)(1) is not a suspension provision. *Wood* seemed to consider it as such, *see* 386 F.3d at 963, and the statute's very text confirms that it is. *See* Okla. Stat. tit. 22, § 991a(A)(1) (authorizing an Oklahoma court to "*[s]uspend* the execution of sentence in whole or in part, with or without probation" (emphasis added)).

The second question, whether Okla. Stat. tit. 21, § 540A(B) includes a "state mandatory minimum sentence," we addressed recently in *United States v. Mason*. There,

---

[4] Although *Wood* addressed whether the IMCA, not the ACA, assimilated Okla. Stat. tit. 22, § 991a, in that very opinion we observed that "[b]ecause of the similarities between the two statutes," the assimilation provisions of the two inform each other. *Wood*, 386 F.3d at 962–3 nn.1–2.

Mason was tried and convicted under the IMCA for violating Oklahoma's first-degree burglary statute. *See Mason*, 84 F.4th at 1154. For such convictions, Oklahoma law imposes a mandatory minimum prison sentence of "not less than seven (7) years," which the Presentence Report recommended, and the district court incorporated and applied. *Id.* at 1154–55. Mason appealed. He argued because he was eligible for a suspended sentence under Okla. Stat. tit. 22, § 991a (the same statute Mr. Ruiz relies on now), that Oklahoma law did not impose a "true mandatory minimum" for his crime. *Id.* at 1154. We disagreed. We held that Oklahoma's use of "not less than" language in its burglary sentencing statute "reflect[ed] Oklahoma's desire to impose a mandatory minimum." *Id.* at 1156. Moreover, we also held an Oklahoma court's "ability to suspend or defer" a defendant's sentence via § 991a is "irrelevant" when an Oklahoma statute includes "not less than" language. *Id.* In other words, *Mason* stands for the propositions that (1) when an Oklahoma statute contains "not less than" sentencing language, it has enunciated an express mandatory minimum sentence that we must incorporate, *see id.* at 1155, 1157; and (2) the "presence of that exact language" forecloses consideration of Oklahoma's other sentencing schemes, *id.* at 1156. In Mr. Ruiz's case, Okla. Stat. tit. 21, § 540A(B) includes the same "not less than" language identified in *Mason* as a state mandatory minimum sentence, and that language thus ends our ability to consider § 991a. *See* Okla. Stat. tit. 21, § 540A(B) (sentencing a violator to prison "for a term of *not less than* one (1) year" (emphasis added)).

Our precedents, *Mason* most clearly of all, foreclose Mr. Ruiz's appeal. To the extent he argues our decision in *Mason* was wrongly decided, such an argument cannot

prevail as "one panel cannot overrule another 'absent en banc consideration'" or intervening Supreme Court authority. *Mason*, 84 F.4th at 1155 (citing *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1142 (10th Cir. 2023)). Even assuming *Mason* was wrongly decided, our decisions in *Wood* and *Jones* compel the same result. *Wood*, 386 F.3d at 963; *Jones*, 921 F.3d at 939.

Mr. Ruiz's final argument that he is eligible under federal sentencing law for a probationary sentence is similarly unavailing. *See* 18 U.S.C. § 3551(b)(1). Our precedents make clear that in cases of assimilated crimes under the ACA and IMCA if a state sentencing statute outlines a mandatory minimum sentence, we must incorporate and apply that state minimum sentence—regardless of whether a defendant is eligible for federal probation.[5] *See Garcia*, 893 F.2d at 256 ("[A] sentence for an assimilative crime must satisfy the 'like punishment' clause of the Assimilative Crimes Act, which requires that the sentence fall within the maximum and minimum terms provided under state law."); *Wood*, 386 F.3d at 963 (holding that "the district court properly ruled the IMCA assimilated only

---

[5] This argument turns on whether we accept Mr. Ruiz's implied premise that he is eligible for federal probation because Okla. Stat. tit. 21, § 540A(B) does not "expressly preclude[]" probation. *See* 18 U.S.C. § 3561(a) (noting that a defendant convicted in federal court is eligible for probation, unless the convicted offense "is an offense for which probation has been expressly precluded"). We are inclined to agree with the First Circuit that such an argument is "smoke and mirrors," and that a "statute that prescribes a mandatory minimum term of imprisonment necessarily (and, thus, expressly) precludes an alternative sentence of probation." *United States v. Troy*, 618 F.3d 27, 37 (1st Cir. 2010). Even so, because our precedents alone are determinative in Mr. Ruiz's case, we need not adopt that principle now, and we leave that for another day.

8

the range of punishment between the minimum and maximum sentences set forth in" the Oklahoma statute Wood had violated); *Christie*, 717 F.3d at 1171 ("This circuit [has] interpreted the ACA's 'like punishment' mandate to require federal sentencing courts to abide any maximum and minimum prison terms proscribed by state law for an assimilated crime."); *Martinez*, 1 F.4th at 790 ("Incorporation of state law is limited to the maximum and minimum penalties for the offense and does not extend to 'state sentencing schemes' . . . [and as such] state law provisions authorizing suspended sentences are not incorporated under the IMCA." (quoting *Jones*, 921 F.3d at 937–38)); *Mason*, 84 F.4th at 1155 (same); *Polk*, 61 F.4th at 1280 ("[The ACA's] like-punishment standard means that we must apply any maximum and minimum prison terms prescribed by state law for an assimilated crime." (cleaned up)). Mr. Ruiz's arguments would have us upend at least three decades of established caselaw. We cannot and will not do so.[6]

---

[6] We note another concern: that, even if our precedents did not demand such an outcome, adopting Mr. Ruiz's position would open a "back-door" for going below federal mandatory minimums beyond what Congress has allowed in 18 U.S.C. § 3553(e) and (f). Because an "assimilated state offense becomes a federal offense" and thus an assimilated *state* mandatory minimum becomes a *federal* mandatory minimum, *see Martinez*, 1 F.4th at 790, the mandatory minimum in Okla. Stat. tit. 21, § 540A(B) becomes, once assimilated, a federal mandatory minimum. Section 3553 allows federal sentencing courts to go below a federal mandatory minimum in only two limited circumstances, neither of which is present here. *See* 18 U.S.C. § 3553(e), (f). By incorporating Oklahoma's suspension provision, then, we would be federalizing another method of imposing sentences below federal mandatory minimums, outside and apart from § 3553(e) and (f). This would clearly violate the mandate that "federal courts *must* depart from state [sentencing laws] when Congress has expressed a specific and contrary penal policy." *Polk*, 61 F.4th at 1280 (quoting *Christie*, 717 F.3d at 1172).

### III.

The district court was correct to assimilate and apply the 1-year mandatory minimum in Okla. Stat. tit. 21, § 540A(B) when sentencing Mr. Ruiz. Mr. Ruiz's contrary arguments contravene this circuit's well-established jurisprudence, and we therefore affirm.

Entered for the Court

Stephanie K. Seymour
Circuit Judge